846 F.2d 78
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
EASTER HOUSE, Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
 No. 87-1519.
 United States Court of Appeals, Federal Circuit.
 March 28, 1988.
 
 Before FRIEDMAN, DAVIS and MAYER, Circuit Judges.
 PER CURIAM.
 
 DECISION
 
 1
 The decision of the United States Claims Court, sustaining the Internal Revenue Services' (IRS's) determination that appellant does not qualify as a tax exempt organization under 26 U.S.C. Secs. 501(c)(3) and 501(a) (Easter House v. United States, 12 Cl.Ct. 476 (1987)), is affirmed.
 
 OPINION
 
 2
 Appellant Easter House is an adoption agency which sought from IRS a declaration of tax exemption as a charitable organization. When this was denied, appellant brought this declaratory judgment action in the Claims Court which held that the IRS was correct. The facts are set forth in the Claims Court's exhaustive opinion, Easter House, supra at 476.
 
 
 3
 The two issues before us are whether (i) Easter House is operated exclusively for charitable purposes, and (ii) no part of the earnings of Easter House inures to the benefit of a private shareholder or individual. On the first question, the Claims Court pointed out, as major reasons why Easter House was not operated chiefly for charitable purposes, that (a) the organization has accumulated very substantial profits, (b) large fees (which are the only source of revenue and were designed to cover all the adoption costs) are charged to the adopting parents, and these were reduced in only a few instances, (c) potential mothers are no longer cared for once they decide to keep their babies, and (d) the good care given the potential mothers is largely designed to produce adoptable and acceptable babies. We agree, on these grounds, with the Claims Court that "the business purpose" [the placing of children for adoption at high fees] "and not the advancement of educational and charitable activities purpose" [the care of the potential mothers as well as the provision of children to parents desiring to adopt them] is appellant's "primary goal."
 
 
 4
 The Claims Court also correctly held that a substantial part of the Easter House earnings inured to its president and only "life member," Howard Kurtz. He elects every other member of the corporation and all the other directors. He has very large powers, and received for 1983 a salary of $45,125.05 for part-time work. He also was a compensated officer of Friends of Children, Inc. (Friends), an adoption agency comparable to appellant, as well as having "other sources of income." He likewise owned or controlled the Tzyril Foundation and Suko Corporation, both concerned with adoption of foreign children. In 1982-83 appellant Easter House made loans to Friends, Tzyril and Suko. There is no indication in the record of the purposes of these loans, but it is clear that Easter House was used by Kurtz as a source of credit to these entities he controlled. The sum of the evidence is, therefore, that it cannot be said that "no part of the net earnings" (emphasis added) of Easter House inures to the benefit of a private shareholder or individual.